John C. McCoy, Jr., and Nelda C. McCoy, Plaintiffs-Appellants, v. City of Knoxville, a Municipal Corporation, Defendant-Appellee.

Gen. No. 11,730.

Second District, Second Division.

May 23, 1963.

Barash & Stoerzbach, of Galesburg, for appellants.

Stuart, Neagle & West, and Max E. Mathers, of Galesburg, for appellee.

CROW, J.

The plaintiffs, John C. McCoy, Jr., and Nelda C. McCoy, filed suit for a declaratory judgment on an agreed statement of facts, seeking a determination that certain property under the zoning ordinance of the defendant, City of Knoxville, can be used for filling station purposes as a lawful pre-existing nonconforming use. The Trial Court held that there was a non-use or cessation of use for filling station purposes for more than two years, and that this constituted a discontinuance of the pre-existing nonconforming use, thus placing the property and proposed use in the "A" Residence District where the proposed use was forbidden by the ordinance. Only the construction of a portion of the zoning ordinance is in issue.

The facts, as shown by the pleadings and stipulation, are substantially as follows: The plaintiffs, John C. McCoy, Jr. and Nelda C. McCoy own, and have owned since January 22, 1950, the subject real estate in the City of Knoxville. When the plaintiffs purchased the real estate on January 22, 1950, it was being occupied and used for filling station purposes, and was bought subject to a lease dated July 27, 1949, given by the plaintiffs' precedessors to Sinclair Refining Company for filling station purposes, which lease covered the period from December 3, 1949 to December 2, 1959. The property was actually used for filling station purposes from prior to January, 1950, until February 28, 1958. On the last mentioned date the lessee, Sinclair Refining Company, suspended its actual operation of a filling station, but its lease was not surrendered and did not terminate until December 2, 1959. The real estate is improved with a filling station building and, among other improvements, are underground wiring and underground gasoline tanks and the building is not suitable for a dwelling in its present condition. It has not actually

been operated as a filling station since February 28, 1958.

Continuously since prior to December 2, 1959, when the Sinclair lease expired, and until after the filing of the present suit, September 8, 1961, the plaintiffs made numerous attempts to lease it to tenants to operate as a filling station, and also made numerous attempts to sell the real estate for filling station purposes, which attempts were made by the plaintiffs individually and through several relators with whom they listed the property. The plaintiffs have now obtained a buyer, the sale to whom, however, is conditioned upon a judicial determination that the real estate may now be used for filling station purposes.

The defendant, on January 6, 1958, passed a zoning, building, housing, and subdivision ordinance, by which the city was divided into three zoning districts: "A" Residence District, "B" Commercial District, and "C" Industrial District. The real estate in this case is located in the "A" Residence District, and, under the district use regulations set forth in the ordinance, filling stations are not permitted in the "A" Residence District, but are permitted in the "B" Commercial District. By reason of Section 8, Part II of the Ordinance, "Non-Conforming Uses," the use of this real estate for filling station purposes as of January 6, 1958 became and was a pre-existing lawful nonconforming use.

The real estate is presently unoccupied, and the defendant has refused, and still refuses, to issue an occupancy permit to the plaintiffs for the use of the real estate for filling station purposes. The defendant has indicated it will charge the plaintiffs with violations of the provisions of the ordinance if they use it for filling station purposes.

Section 8 of Part II of the ordinance provides, among other things, as follows:

"Section 8. Nonconforming uses.

(a) The lawful use of a building existing at the time of adoption of this Ordinance or of a change in the district classification may be continued even though such use does not conform with the provisions thereof. . . .

. . . . . .

(d) In the event that the nonconforming use of a building or premises is discontinued for a period of two years or more, such building or premises shall thereafter be used only in conformity with the regulations of the district in which it is located."

It is the theory of the defendant that the non-user of a pre-existing lawful nonconforming use for two years or more should conclusively be presumed to be an abandonment or discontinuance of that use and no voluntary act of abandonment or discontinuance is necessary, and that under the circumstances here the right of the plaintiffs to use this real estate for filling station purposes has ceased.

It is the plaintiff's theory that the word "discontinued" as used in this ordinance, Sec 8(d), is equivalent to "abandonment," and that the facts here show that there has never been any "discontinuance" in that sense of the term.

■■ Every zoning case must be determined upon its own peculiar facts, and with regard to the provisions of the particular zoning ordinance involved; the right to a nonconforming use is a property right and any provision of an ordinance which takes away that right in an unreasonable manner, or in a manner not grounded on public welfare would be invalid: Schneider v. Board of Appeals etc. (1949) 402 Ill 536, 84 NE2d 428; Douglas v. Village of Melrose Park et al.

382

(1945) 389 Ill 98, 58 NE2d 864; Brown et al. v. Gerhardt et al. (1955) 5 Ill2d 106, 125 NE2d 53.

In Douglas v. Village of Melrose Park et al. (1945) 389 Ill 98, 58 NE2d 864, where the zoning ordinance provided that "whenever a nonconforming use of a building has been discontinued . . . such use shall not thereafter be changed to a use of lower classification," it was held that "discontinued" means more than a mere suspension of the nonconforming use; discontinuance is equivalent to abandonment; time, per se, is not an essential element of abandonment, though it is evidential; and from the efforts of the property owner there to rent or sell the property for the nonconforming use it cannot be said they intended to abandon the nonconforming use, though the property had not actually been used for the nonconforming use for several years, and the owner had not there discontinued the nonconforming use, under the circumstances. In People ex rel. Delgado et al. v. Morris et al. (1948) 334 Ill App 557, 79 NE2d 839, it was held that to constitute an abandonment of a nonconforming use it must appear there is an intent to abandon such; mere cessation of use will not, per se, result in a loss of the right to resume such use; and it did not appear there that the owner committed any act from which an intention to abandon the nonconforming use could be inferred, though the place was not occupied for nearly three years. And Brown et al. v. Gerhardt et al. (1955) 5 Ill2d 106, 125 NE2d 53 is to the same effect.

The Illinois cases referred to by the defendant (other than such as we've alluded to), namely, Mercer Lumber Co. v. Village of Glencoe (1945) 390 Ill 138, 60 NE2d 913, Dube et al. v. Allman et al. (1948) 333 Ill App 538, 77 NE2d 855, and Price et al. v. Ackmann et al. (1951) 345 Ill App 1, 102 NE2d 194,

383

do not deal with the particular problem here concerned.

■ The presence in the instant ordinance, Sec 8 (d), of the phrase "for a period of two years or more" after "discontinued" does not alter the meaning of the word "discontinued." That same word is still there. It still means, as heretofore construed, more than a mere suspension of a nonconforming use. It continues to be the equivalent of abandoned. There still must be an intent by the owner to abandon such nonconforming use in order for it to be said that such has been discontinued. Mere cessation of use will not, per se, result in a loss of the right to resume such use. And the nonconforming use must be so discontinued, in accordance with those principles, for a period of two years or more in order for the right to the nonforming use to be terminated.

The relatively recent case of Dobbs et al. v. Board of Appeals of Northampton et al. (1959), 339 Mass 684, 162 NE2d 32, involved a zoning ordinance, which provided, in part, as follows:

> "When any nonconforming use has been discontinued for a period of two (2) years it shall not be re-established, and future use shall be in conformity with this ordinance."

The zoning ordinance had been adopted February 17, 1949. The property had been used as a grocery store from 1922 to 1949 or 1950, then for the storing and sale of farm equipment until May, 1954, then for storage until May, 1955, when the building became vacant. Some efforts were made to lease the property. It was listed with a real estate agent. For rent signs were placed in the windows. Advertisements were placed in the local newspaper. In March, 1958, an application was made to use it for a beauty shop. The Board of Appeals granted the application, but the trial

384

court reversed, finding that a nonconforming use of the premises had been made until March 15, 1954, when the nonconforming use was discontinued, and that that use had been voluntarily discontinued by the owners of the real estate for a continuous period of four years prior to the board's decision. The Supreme Judicial Court of Massachusetts held that the trial court's decree could not be sustained on that ground, although it was affirmed on another ground not presently material, and in its opinion, at pages 33 and 34, said, so far as relevant to the present case:

"We have indicated that for a finding of discontinuance there must be evidence of abandonment, that is, of intent to abandon and of voluntary conduct carrying that implication. Pioneer Insulation & Modernizing Corp. v. City of Lynn, 331 Mass 560, 564–565, 120 NE2d 913. We think that the evidence of abandonment is insufficient. We assume that evidence of things done or not done which carries the implication of abandonment will support a finding of intent, whatever the avowed state of mind of the owner, so that the second of the two factors mentioned in the Pioneer case may, in appropriate circumstances, be controlling evidently. But so far as an intent is shown in the owners' conduct in allowing the premises to be without a tenant for two years and nine months, making some effort to rent for business use, making no effort to convert to residential use, it is an intent to continue the business use. The negotiations for the beauty shop rental speak of a continuing intent. Failure to make any use of premises for an extended time might, we assume, evidence an intent to abandon any profitable use so that the nonconforming privilege would be lost, but we do not think the lapse

385

of time here is such as to permit that conclusion. We see no basis for concluding that such rental efforts as were made were in bad faith. The lapse of time was not so great that those efforts and the absence of an attempt for residential use, lose all significance. We see no basis for concluding that intent to abandon existed for two years or more. The ordinance does not intend a loss of a nonconforming use merely from nonoccupancy."

In another case decided by the Superior Court of Pennsylvania, Appeal of Langol (1954) 104 A2d 343, a zoning ordinance provided as follows:

"Whenever a nonconforming use of a building or portion thereof has been discontinued for a period of at least one (1) year, such nonconforming use shall not thereafter be re-established, and the future use shall be in conformity with the provisions of this ordinance."

The ordinance was adopted in January, 1942. Then and prior thereto a grocery, confectionery, and meat market were operated in the storeroom in the real estate concerned, and so continued thereafter, as a lawful nonconforming use, until May, 1950, when the storeroom became vacant. It was admittedly vacant for more than one year, but during that period the owners attempted to rent it for store purposes. Langol leased it in August, 1951, for a restaurant and obtained a certificate of occupancy. Later the Certificate was revoked. The Trial Court reversed the Board and the Superior Court affirmed. The Court held that "discontinued" in such an ordinance was equivalent to "abandonment," that to lose a nonconforming use there must appear an intention to abandon it, the only evidence here relevant negatives abandonment,

386

during the vacancy period the owners attempted to rent it for store purposes, there was no intention to abandon the nonconforming use, and consequently the use was not "discontinued," in legal contemplation.

In Board etc. v. Boykin (1957), 265 Ala 504, 92 So2d 906 the zoning ordinance provided that whenever a nonconforming use had been discontinued for one year it could not be re-established. The Court held, so far as material, that discontinuance is equivalent to abandonment; discontinuance results from the concurrence of an intent to abandon and some overt act or failure to act which carries the implication of abandonment; it means something more than a temporary nonoccupancy for the purpose of making repairs; remodelling or repairing shows an intent to continue rather than abandon a nonconforming use; and in that case the Trial Court's determination that there had been no discontinuance was not manifestly wrong or plainly erroneous.

Cf. Town of West Hartford et al. v. Willetts et al. (1939), 125 Conn 266, 5 Atl2d 13.

Ranney et al. v. Instituto etc. (1955), 20 NJ 189, 119 Atl2d 142, referred to by the defendant, involved a requested variation, and an extension of a nonconforming use,—wholly different questions than those here involved,—and some of the general comments in the opinion are not expressive of Illinois law. Dorman v. Mayor et al. (1947), 187 Md 678, 51 Atl2d 658, also cited, involved facts quite dissimilar to those here presented. State ex rel. Brill v. Mortenson et al. (1959), 6 Wis2d 325, 96 NW2d 603, referred to by the defendant, did not involve an original nonconforming use and the discontinuance, vel non, thereof, but a substituted nonconforming use which was not in existence when the ordinance was adopted, and the discontinuance thereof, as to which the rules may be, as

387

the Court recognized, quite different. In Auditorium Inc. v. Board etc. (1952), 8 Terry (Del) 373, 91 A2d 528, most of the opinion dealt with the insufficiencies of the record and the cause was remanded to ascertain the zoning district boundaries and in what zone the property concerned was located, or whether it was not zoned at all, and the facts were not similar to those in the case at bar, but, to the extent the case holds that nonuser of a nonconforming use in excess of two years under the type of ordinance there involved shall conclusively be presumed to be an abandonment of that use, we believe such is not the law of Illinois or the majority view. Similarly, as to Franmor Realty Corp. v. Leboeuf et al. (1951) 104 NYS2d 247, 109 NYS2d 525, cited by the defendant, though the facts are different than here, to the extent it means to hold, if it does, that the mere fact a nonconforming use is discontinued for more than one year under the ordinance there concerned results in an abandonment regardless of the intention of the owner to abandon or not, we believe it is not the law of Illinois or the majority view.

■ Under the agreed facts in this case and the law, it is our opinion that there was no abandonment or discontinuance of the pre-existing lawful nonconforming use for the two-year period fixed by the ordinance. In view of the facts showing the efforts and intent of the plaintiffs to lease or sell the premises for filling station purposes throughout the period of two years, as well as the continued existence of the Sinclair lease for that purpose until December 2, 1959, and that it was not used for any other purpose, it is our opinion that the issue of fact as to the intent of the plaintiffs must be resolved in favor of the plaintiffs. If there was no intent to abandon the nonconforming use during that period, the Trial Court should have held that that use had not been discontinued and the plaintiffs had not lost their right to use the prop-

erty for filling station purposes, as a pre-existing lawful nonconforming use under these circumstances.

The judgment is therefore reversed, and the cause remanded, with instructions to grant the relief prayed in the complaint.

Reversed and remanded with instructions.

WRIGHT, PJ and SPIVEY, J, concur.