Arthur A. Darrigrand, J.
Petitioner in this article 78 proceeding seeks to review a decision of the Zoning Board of Appeals affirming the denial by the Building Inspector of an application for a building and occupancy permit.
On October 9, 1956 and prior to the adoption of the Zoning Ordinance of the Town of Kirkland on March 8, 1962, petitioner entered into a lease with Sinclair Refining Company providing for the construction and leasing of a gasoline service station on petitioner’s property located in said town on the *200 southerly side of South Street, Clark Mills. . The term of the lease was for 12 years with an option to renew for an additional 5 years or to continue thereafter on a month-to-month basis. The parties do not dispute that the service station was constructed and in operation when the original ordinance was enacted designating the property as R-2 Residential, thereby constituting a nonconforming use.
On December 18, 1964 an amendment to the ordinance was adopted which provided that the territory on South Street commencing at the bridge and extending in a westerly direction to the town line, which included petitioner’s property, then zoned R-2 Residential, be changed to C-2 Commercial. The ordinance was again amended on November 9, 1967 by a provision that the boundaries of the C-2 area on South Street, as established by the amendment of December 18, 1964, be limited to the area northerly of the center line of South Street.
Sinclair Refining Company terminated its lease with petitioner on March 12, 1970. On May 26, 1970 petitioner applied for a certificate of occupancy as a gasoline service station. A letter from the Building Inspector, dated June 1, 19701, indicated that petitioner’s application was in order but would be withheld pending the installation of a sewer connection and some repairs to the building. An application for a permit to install the sewer connection was made on June 3, 1970'. About two weeks later, on June 16,1970, the Building Inspector denied the application for the certificate of occupancy on the basis that the property was located outside a C-2 district as established by the amendment to the ordinance of November 9, 1967.
An appeal was made to the Zoning Board of Appeals on July 1, 1970 and a public hearing was conducted on July 23, 1970. Thereafter and on or about August 25, 1970 the appeal was denied and petitioner instituted an article 78 proceeding. This petition was heard before Hon. Francis R. Morax who remitted the proceedings to the Zoning Board of Appeals to conduct a further hearing. The board was directed to determine,
(1) whether the 1967 amendment was validly adopted, (2) whether there had been a discontinuance of a nonconforming use under section 31 (subd. 4) of the Zoning Ordinance, (3) whether the amortization provision of section 30 of the Zoning Ordinance was applicable, and (4) whether the board should grant a variance to permit the operation of a gasoline station on the premises.
*201 The second public hearing* was held oh November 19, 1970 at which further testimony was presented. The decision of the Zoning* Board of Appeals dated May 19, 1971 held,
(1) that the 1967 amendment was validly adopted, (2) that there had been a discontinuance of the use of the property as a gasoline station for a period of approximately 7 years, (3) that the amortization provision of section 30 did not apply and (4) that the provisions of the ordinance unreasonably restricted the use of the land and building, the variance sought was the minimal variance, and the granting of a variance would alleviate a demonstrable hardship; and (5) nevertheless, the granting of a variance would be destructive of the ordinance’s purpose to preserve the area as residential, and would cause traffic congestion creating a risk to children attending a nearby elementary school.
Article VIII of the Zoning Ordinance deals with the subject of nonconforming uses. Section 28 thereunder provides: ‘ ‘ Any non-conforming* use, building or structure which existed lawfully at the time of enactment of this ordinance may be continued, subject to the regulations which follow in this Article.”
Section 31 entitled, “ Non-Conforming Use of Building’s ” provides by subdivision 4 as follows:
‘ ‘ Discontinuance. A non-conforming use of a building or structure which is discontinued for a period of twelve consecutive months shall not be reestablished, and any subsequent use shall conform to the use regulations of the district in which the premises are located. A use shall be deemed to have been discontinued under any of the following conditions :
“ a. Vacancy of a non-conforming use building for a period of twelve consecutive, months.
1 ‘ b. Manifestation of a clear intent on the part of the owner to abandon the non-conforming* use.”
Photographs and a sketch of the area, produced at the hearings, provide the court with a general description of the area involved along South Street. On the southerly side of South Street from the town line to the bridge there are located an elementary school, petitioner’s property, and 6 residences. On the opposite or northerly side of the street are located 8 residences and a greenhouse. In the next block of South Street, easterly of the bridge, there are located a manufacturing* building, retail stores, residences, an American Legion Post and picnic grounds. Immediately west of the subject premises and on the north side of South Street in the adjoining* Town of Westmoreland there are located a gasoline station and garage. *202 The testimony of the individuals who testified at the hearings was to the effect that the subject property was in a general state of disrepair and had not been operated as a gasoline station for approximately 6 or 7 years and that the gasoline pumps had been removed for a period considerably in excess of one year.
The main question to be decided is whether, under the facts established and the ordinance involved, was the right to continue the nonconforming use lost by the tenant’s nonuse.
Research of the law in this respect does not lead to any definitive answer. In Anderson, American Law of Zoning ([1968 ed.], Vol. 1, § 6.61) it is stated: “The requirement of intent to abandon is the most imposing obstruction to municipal attempts to terminate nonconforming uses which have been dormant for a period of time. Some draftsmen, in an apparent attempt to solve the problem, have included a provision that a nonconforming use may not be resumed after it has been discontinued for a specified period. * * * Ordinances which use the term ‘ discontinued, ’ rather than ‘ abandoned, ’ apparently attempt to avoid the intent problem inherent in the latter. ’ ’
Rathkopf, The Law of Zoning and Planning ([3d ed.], Yol. 2, § 61-9) states: “ A temporary cessation, even for a lengthy period, caused by circumstances over which the property owner had no control, is generally held not to constitute proof of a discontinuance in the sense of abandonment within the meaning of zoning ordinance provisions since the circumstances themselves negate an inference of the necessary intention to abandon the use.”
In section 61-3 Rathkopf also states that while some jurisdictions uphold ordinances terminating nonconforming uses after mere nonuse for a stated period of time regardless of intention, other jurisdictions in similar situations require proof of an intention to abandon.
McCoy v. City of Knoxville (41 Ill. App. 2d 378 [1963]) involved a situation similar to the instant case. Sinclair Refining had leased a service station but suspended operation of it on February 28, 1958, although the lease was not terminated until December 2, 1959. The zoning ordinance in question contained a provision that if a nonconforming use was discontinued for a period of two years or more, the premises must then conform to the regulations of the district. The facts showed that upon expiration of the lease, the owner made numerous attempts to lease or sell the premises as a gasoline station. The Illinois *203 court held that discontinuance meant more than a mere suspension and that proof of an intention to abandon the nonconforming use was necessary.
Canada’s Tavern v. Town of Glen Echo (260 Md. 206 [1970]) holds to the contrary. There the zoning ordinance provided that a nonconforming use, once abandoned, could not be re-established and that abandoned “ shall be defined as the cessation of a nonconforming use for a period of six months or more.” The facts indicated that after a lessee of a restaurant being operated as a nonconforming use closed his business, no use was made of the premises for over 6 months. Thereafter the owner leased the premises to Canada’s Tavern, Inc. The Maryland court held that nonuse of the premises as a restaurant for the prescribed period resulted in the abandonment of the nonconforming use regardless of the owner’s intent to the contrary.
Recent decisions in New York would appear to follow the reasoning in Canada’s Tavern v. Town of Glen Echo (supra). City of Binghamton v. Gartell (275 App. Div. 457 [1949]) involved an ordinance providing for continuation of existing property uses at the time the ordinance was enacted but directing that 1 ‘ if such non-conforming use is discontinued, any future use of such premises shall be in conformity with the provisions of this ordinance.” No specific time period was prescribed in the ordinance. It was decided by the court that in the absence of evidence showing an intention to abandon the nonconforming use it could continue.
City of Binghamton v. Gartell (supra) was distinguished by a later decision in Franmor Realty Corp. v. Le Boeuf (201 Misc. 220, affd. 279 App. Div. 795 [1951]) where the ordinance involved provided as follows: “ No non-conforming use which shall have been discontinued for a period exceeding twelve (12) months shall be resumed nor shall it be replaced by another non-conforming use.” The evidence indicated that there was nonuse of a gasoline station for a period of approximately 8 years due to war restrictions imposed upon the use of gasoline and the inability of the owner to rerent or to sell the premises for use as a gasoline station. The trial court upheld the validity of the nonuser provision in the ordinance and being satisfied that the period provided in the ordinance was reasonable, held that such actual nonuse for a period of 8 years terminated the right to continue the nonconforming use regardless of any intention to abandon it.
A memorandum decision by the Fourth Department in Village of Spencerport v. Webaco Oil Co. (33 A D 2d 634) *204 held that an ordinance providing that discontinuance of a nonconforming use for a specified period of time results in the loss of the right to resume it, ‘‘ is deemed to supply as a matter of law the element of intent, so that discontinuance of the nonconforming use for such period, if reasonable in length, amounts to an abandonment of the use No facts are set forth in the memorandum.
In Gauthier v. Village of Larchmont (30 A D 2d 303) premises were used as hotel prior to the enactment of a zoning ordinance. After the enactment of the ordinance, the bar portion of the hotel was discontinued for a period of several years. The ordinance provided that a nonconforming use discontinued for 6 months could not be resumed. The court held that the operation of the bar was an accessory use and (p. 305) that, “ Cessation of the accessory use caused by circumstances beyond the control of the user is not sufficient to establish abandonment ”.
It is well established that zoning laws and regulations, being in derogation of the common law, must be strictly construed in favor of the owner of private property. (Matter of Glenel Realty Corp. v. Worthington, 4 A D 2d 702, and cases there cited.) On the other hand, zoning ordinances are designed to promote orderly growth and development for the general welfare and for that reason the abolition of nonconforming uses whenever possible is encouraged. (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553; Matter of Schneiderman v. Shenkenberg, 54 Misc 2d 66.) This policy toward nonconforming uses is reflected in Matter of Harbison v. City of Buffalo (supra) and Matter of Franmor Realty Corp. v. Le Boeuf (supra).
It is petitioner’s contention that during the period of the lease with Sinclair she had no control over the premises and could not compel the lessee to operate a gasoline service station. The testimony reveals that the application to the Building Inspector for a certificate of occupancy was made less than three months after the termination of the lease. The zoning ordinance makes no provision for the status of nonconforming uses under such circumstances. Both the Franmor and Canada’s Tavern decisions (supra) involved situations where apparently the owners had control of the premises during the period prescribed in the respective ordinances as sufficient and reasonable to terminate the nonconforming use when they could have continued such use.
The facts herein fail to establish any actual intention on the part of petitioner to discontinue or abandon the nonconforming use. She leased the premises for use as a service station and *205 for no other purpose. It is not reasonable to assume that the failure of the lessee to continue operation of the station indicates an intention on the owner’s part to abandon his right to continue the nonconforming use. In view of the lack of a specific directive in the ordinance and the requirement for strict construction, petitioner is deemed not to have abandoned or discontinued her right to a nonconforming use of the premises as a gasoline service station.
It is unnecessary, therefore, to determine whether a variance should have been granted. The determination of the Zoning Board of Appeals is, therefore, vacated and annulled.