## WOOD v. DISTRICT OF COLUMBIA.

### Nos. 201, 202.

Municipal Court of Appeals for the District of Columbia.

Sept. 28, 1944.

---

68

Stanley H. Fischer, of Washington, D. C. (Joseph B. Danzansky, of Washington, D. C., on the brief), for appellant.

Vernon E. West, Principal Assistant Corporation Counsel, of Washington, D. C. (Richmond B. Keech, Corporation Counsel, and Warren Browning, Assistant Corporation Counsel, both of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Appellant was charged and convicted (1) of operating a livery stable without having obtained the appropriate license, and (2) of having changed the use of certain premises without having first obtained a certificate of occupancy from the Inspector of Buildings. Fines were imposed and we granted an appeal.

Counsel have agreed that the sole issue is whether appellant was required to obtain an occupancy certificate before engaging in business on the premises involved. Section XX of the Zoning Regulations[1] does not require an occupancy certificate for "the continuance of the present occupancy or use of any premises or of any existing building." The question we are asked to decide is whether the present use of the premises as a stable wherein appellant keeps his own horses, boards horses for others and rents horses for riding, is the continuance of a prior non-conforming use.

The building, a brick structure at the rear of 2214 G Street, N. W., faces a public alley and was built and equipped as a stable. It contains numerous stalls and other appurtenances of a stable and for many years, one witness states more than 40, has been used for the stabling of horses. Appellant rented these premises in the spring of 1943 and has continued there a business he formerly conducted in the same general neighborhood.

The property had then been vacant for about six years. It was in the hands of a rental agent, and had been advertised for rent as a stable. The last prior occupant, who died about 1937, had made a business of buying and selling horses. The exact nature of this business is not disclosed but it is certain that horses were kept and stabled in the building during that period and during the prior tenancies.

The location is convenient to the bridle paths of East Potomac Park. The record shows that there is another livery stable on G Street three blocks distant, and there is no evidence that appellant's stable in its present location is prejudicial to the neighborhood.

In considering whether the stabling of horses by appellant on these premises is a continuance of the former use, a proper inquiry is whether the lapse of time works a discontinuance of the former use within the intent of the Zoning Act. We find no pertinent local decision. However, the question has been the subject of consideration in other jurisdictions where similar zoning laws permit continuance of a nonconforming use.

In State v. Manders, 206 Wis. 121, 238 N.W. 835, 837, it was said: "We think the right secured to the owner by the terms of the ordinance is not lost by either accident or unpropitious circumstances over which he has no control which brings about a mere suspension of the nonconforming use. It is a right extended to him and to be enjoyed by him until he voluntarily relinquishes or abandons it."

 The clear weight of authority is that discontinuance of a non-conforming use results from the concurrence of two factors, (1) the intent to abandon and (2) some overt act or failure to act which carries the implication of abandonment.[2]

 In the cases cited the periods of non-user extended from a few months to three and one-half years. It is clear that lapse of time may only be considered as one element in determining whether a non-conforming use is abandoned. Here the construction and equipment of the building, without substantial changes, limited its use to the stabling of horses. That it was re-

[1] Zoning Regulations of the District of Columbia adopted under the Acts of Congress of March 1, 1920 and June 20, 1938. Code 1940, §§ 5—412 to 5—425.

[2] Landay v. MacWilliams, 173 Md. 460, 196 A. 293, 114 A.L.R. 984; Appeal of Haller Baking Co., 295 Pa. 257, 145 A. 77; State v. Manders, supra; City of Miami Beach v. State, 128 Fla. 118, 174 So. 443; State v. Hunt, 235 Wis. 358, 291 N. W. 745.

tained in this condition during the extended period of vacancy, and that it was being advertised for lease as a stable, show plainly that it was not intended to abandon its non-conforming use.

The next question is whether the present use was a continuance of the former. Several witnesses testified that the last occupant and prior tenants had used the premises as a stable. One witness who had lived near the property since 1909 states that there were various occupants, all of whom used the premises as a stable, and that the last occupant, one Corbin, "ran a stable there and sold horses there." Other witnesses testified that it was used as a stable where horses were bought and sold and one witness says that Corbin "had used the premises as a horse market."

■ Two purposes are clearly implied in the zoning law: First, the preservation of the character of a neighborhood by excluding new business and structures prejudicial to the restricted purposes of the area and the gradual elimination of such existing structures and trades; second, the protection of an owner's property or existing business from the impairment which would result from enforced accommodation to new restrictions. In many instances these purposes conflict and opinions differ as to which should take precedence. An analysis of pertinent cases indicates that the courts have been largely influenced by the relative advantage or hardship resulting.

It has been held that where premises occupied by a garage were destroyed by fire, subsequent use of the ground as a parking lot was not a "change in use." People v. Emigrant Ind. Sav. Bank, 261 App.Div. 402, 25 N.Y.S.2d 605, 607. The same court had held that where the owner of two adjoining lots occupied a residence on one and on the other operated a stand where he sold flowers, vegetables and fruit grown primarily by himself, but later increased this business, buying largely from others and adding lines of pottery and wooden lawn ornaments, a change in use resulted, People v. Perkins, Sup., 8 N.Y.S.2d 868, but on appeal this decision was reversed, 282 N.Y. 329, 26 N.E.2d 278. And where the original use was by a contractor for the storage of his trucks, sand and gravel, a cheese company using the building for storage of its trucks and cheese was held to continue the same substantial use. North American Bldg. & Loan Ass'n v. Board of Adjustment, 117 N. J.L. 63, 186 A. 727.

The expansion of a small, chiefly retail, coal and coke yard to a large retail coke yard was held not to be a change in use. Cockran v. Roemer, 287 Mass. 500, 192 N. E. 58.

■ Here the owner has a structure which is adapted to a special use, the stabling of horses. It had been so used for many years. It may not be possible to adapt it to other uses. Whether the horses stabled on the premises are for sale or for rent can make little difference on the record before us. We think the decisive factor is that the continuous use has been the stabling of horses. The Zoning Regulations recognize a distinction between a "public stable or riding academy" (Zoning Regulations, Sec. IV (16) and a "private stable" (Sec. XXIII (17). We see no good reason for further subdividing the public stable, distinguishing between those where horses are sold and where they are rented.

Reversed.