Paul M. SMITH, Appellant,

v.

Vernon HOWARD et al., Appellees.

Court of Appeals of Kentucky.

Oct. 14, 1966.

Robert S. Miller, Miller, Griffin & Marks, Lexington, for appellant.

Edward A. Marye, Jr., Versailles, for appellees.

HILL, Judge.

The judgment from which this appeal is prosecuted upheld the action of the Building Inspector and the Board of Adjustment of the City of Versailles denying appellant Paul M. Smith the right to continue using his property under a nonconforming use provision of the zoning ordinance of the City.

It is provided in a zoning ordinance passed November 1, 1955, for the City of Versailles that:

"Any use of land or structure existing at the time of enactment or subsequent amendment of this ordinance, but not in conformity with its provisions, may be continued with the following limitations.

\*   \*   \*   \*   \*   \*

"33.3   No non-conforming use may be reestablished after it has been discontinued for one year. Vacating of premises or building or nonoperative status shall be evidence of a discontinued use."

The ordinance follows KRS 100.069 pertaining to "nonconforming" uses of property within the zoned territory.

Since about 1940 appellant, or his predecessor in title, has either operated or leased the property involved herein, located at 161 Virginia Avenue, Versailles, Kentucky, for light manufacturing activities. The business conducted on the property

from 1940 to 1960 involved the reconstruction and repair of tractors.

Following the termination of the tractor repair and reconstruction business in 1960, the building and premises were leased to a plumbing supply business, which was perhaps a little less noisy in activity. This business continued until September 1961. During the occupancy of the plumbing supply business, a part of the property was used by the Woodford Manufacturing Company.

During the last half of July 1962, the East Side Screw Company leased and occupied the property. It is the use by the screw company that has been denied by appellees.

Appellant takes the position the "nonconforming" use has not been discontinued, while appellees argue the converse. Appellees say the change of the use is unauthorized and that appellant should be estopped to continue the "nonconforming" use of the property by reason of a letter from appellant to appellees concerning permission for the lease to the screw company.

In Darlington v. Board of Councilmen of City of Frankfort, 282 Ky. 778, 140 S.W.2d 392 (1940), this court said:

"It would seem, therefore, that the right to utilize one's property for the conduct of a lawful business not inimicable to the health, safety, or morals of the community, becomes entitled to constitutional protection against otherwise valid legislative restrictions as to locality, or, in other words, becomes 'vested' within the full meaning of that term, when, prior to the enactment of such restrictions, the owner has in good faith substantially entered upon the performance of the series of acts necessary to the accomplishment of the end intended."

The right of appellant to continue the use of his property as it was being operated at the time of the enactment of the zoning ordinance in question is a "vested" property right protected by law.

Now to the question of whether that right has been lost by the discontinuation of the business for one year as stated in the zoning ordinance.

Zoning ordinances containing provisions in derogation of common law property rights are strictly construed. Rathkopf's Law of Zoning and Planning, volume 1, chapter 8, section 1.

What is meant by: "Discontinued for one year?" Appellees contend that cessation of the activities of the business for three hundred sixty-five days constitutes a discontinuation "for one year" within the meaning of the ordinance. Appellant argues there must be not only an overt discontinuation of activities but some evidence of intention to discontinue. The ordinance provides that "vacation of premises or building or non-operative status shall be evidence of discontinued use."

We conclude that the discontinuation of use sufficient to forfeit a nonconforming use must either be intentional or fraught with such lack of diligence as to amount to an abandonment for the required period.

It is written in Rathkopf's Law of Zoning and Planning, volume 2, chapter 61, section 5, that:

"A temporary cessation, even for a lengthy period, caused by circumstances over which the property owner had no control, is generally held not to constitute proof of a discontinuance in the sense of abandonment within the meaning of zoning ordinance provisions since the circumstances themselves negate an inference of the necessary intention to abandon the use.

\* \* \* \* \* \*

"Similarly, where there is a period of non-use because of the financial inability of the owner to continue in business or to find a tenant desirous of using the

premises for a purpose permissible as a non-conforming use the requisite intent to abandon is lacking, and the right to resume the non-conforming use when opportunity presents itself is not lost."

In the present case, the record indicates appellant exercised due diligence to lease his property. There is no evidence of an intention to abandon it. The business of the last lessee was less obnoxious than the one operated at the time of the adoption of the ordinance, although both are considered by the litigants and by this court as light industry.

■ It is concluded appellant did not forfeit his right to continue the "nonconforming" use of his property by his inability to lease it for approximately one year.

Appellees rely heavily on City of Bowling Green v. Miller, Ky., 335 S.W.2d 893, 87 A.L.R.2d 1 (1960). Appellant also cites Miller. In the Miller case, the original use involved the "display, storage and delivery of furnaces," but the owner sought to change the use to "storage of plumbing fixtures and sheet metal business." In concluding that the sheet metal business was an unauthorized extension of the "nonconforming" use, this court said: "The sheet metal business, however, is something entirely different."

Before leaving the Miller case, it may not be too burdensome to also quote the following:

"It is well recognized that a temporary vacancy or nonuser of the premises without evidence of an intention to abandon the non-conforming use does not extinguish it. See Landay v. MacWilliams, 173 Md. 460, 196 A. 293, 114 A.L.R. 984; and cases discussed in 114 A.L.R. 991."

Appellees contend that change from tractor and plumbing business to the screw business constituted an unauthorized change of the nonconforming use under section 33.4 of the ordinance, which is as follows: "No non-conforming use may be changed to any other use except one which is a permitted use in the district in which it is located."

■ This section of the ordinance is an unauthorized limitation on the rights conferred by KRS 100.069 and KRS 100.854. The former statute provides:

"The use of a building or structure existing at the time of the adoption of any zoning regulation or restriction, or at the time of any adjustment or revision thereof or amendment thereto, although such use does not conform to the provisions of such new regulations or restrictions, may be continued, and a nonconforming use of a building or structure *may be changed to another nonconforming use of the same or more restricted classification."* (Our emphasis.)

The phrase "more restricted classification" within the meaning of the above statute is synonymous with "less objectionable" or "less obnoxious."

The judgment appealed from did not find the use by the screw company to be more or less restricted or more or less obnoxious. It only found the change to be "one that was not permitted under the zoning ordinance."

By necessity, therefore, we must examine the findings of fact by the Board to determine whether the use by the screw company is "more restricted" or "less obnoxious." We need not go further than to quote the following paragraph of the Board's findings:

"The business of the East Side Screw Products Company is classified 'light industry' by the witnesses. The noise level is low. The manufactured products can easily be held in the palm of your hand. The evidence shows that, as a practical matter, the present use by East Side Screw Products Company *is no more obnoxious than its former uses."* (Our emphasis.)

We find the use by the screw company to be less obnoxious and more restricted within the meaning of KRS 100.060. Therefore, there was no forfeiture of the nonconforming use due to change of the use.

In a letter dated July 27, 1962, appellant wrote the Zoning Commission asking for permission to lease his property to the screw company, the last two paragraphs of which we quote:

"It is my understanding that this manufacturing firm will locate in Versailles permanently only if they can lease a building here now suitable for their needs until they can get a new building built here on a tract of land on which they now hold an option.

"It is in the interest of helping industry to locate in Versailles that I am making my building available to them and that I ask this permission of the Zoning Board, and I will not use the permission or this occupancy of the building in any way as an excuse for the continued use or rezoning of this building."

Appellees contend that by reason of the contents of this letter and their verbal permission for the screw company to occupy the premises for "one year" the appellant should now be estopped to claim the continued nonconforming use of his property. With this contention we cannot agree. Having concluded that at the time this letter was written appellant had a vested right to enjoy the nonconforming use of his property, the representations contained in his letter being without consideration did not amount to an estoppel.

The essential elements of equitable estoppel are found in 19 Am.Jur., Estoppel, section 42, page 642. They are:

"(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially."

Certainly it cannot be said that the third element of the above definition of equitable estoppel is present in this case. The Board took no action as a result of the letter, which was of "such character as to change its position prejudicially."

In his zeal to keep his nonconforming use, and perhaps with some fear of the power of the city fathers and of the rapidly developing zoning laws, appellant sought permission to continue his use by a gratuitous assertion he would not ask for an extension. In so doing, he was not estopped.

The judgment is reversed with directions to enter judgment consistent herewith.