COUNTY OF SAUNDERS, APPELLEE, V. CLARENCE N. MOORE, JR., ET AL., DOING BUSINESS AS MIDWAY TRAILER PARK, INC., APPELLANTS.

155 N. W. 2d 317

Filed December 22, 1967. No. 36589.

Paul E. Watts, for appellants.

Robert E. Sullivan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an action in equity by plaintiff, County of Saunders, Nebraska, to enjoin the defendants, Clarence

N. Moore, Jr., and Ardis D. Moore, from operating, constructing, or maintaining the use of their property as a trailer court or camp. The property, consisting of approximately 14 acres, is located some distance south of the village of Yutan, County of Saunders, Nebraska.

The trial court found in favor of the plaintiff, granted the injunction, and the defendants have perfected their appeal to this court. We affirm the judgment.

Defendants acquired the property in question in 1964. In April 1966, the defendants, doing business as Midway Trailer Park, Inc., had made plans to convert the property from agricultural land into a trailer court. The County Board of Supervisors of Saunders County, Nebraska, adopted zoning regulations for Saunders County effective September 6, 1966, which zones the property in question as R-1 (residential district). Trailer courts or camp grounds were permitted only in areas zoned C-1 (highway commercial district).

The issue in this case is whether the defendants, prior to the effective date of Saunders County zoning regulations (September 6, 1966), had acquired a vested interest in an existing nonconforming use permitting them to continue and complete, or partially complete, the project irrespective of the zoning regulations.

A nonconforming use is an "existing use" which is contrary to the zoning regulations. And a permitted use is not a nonconforming use. Board of Commissioners v. Petsch, 172 Neb. 263, 109 N. W. 2d 388; 101 C. J. S., Zoning, § 180, p. 936. The general rule is, and this court has held, that an "existing use" means the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose. An "existing use" for business purposes ordinarily means a construction or use of the premises so that they are adaptable for the business purpose and the actual employment of the building, room, or land within the scope of the purpose. Board of Commissioners v. Petsch, *supra;* 101 C. J. S., Zoning, § 184, p. 940; Chayt v. Board

of Zoning Appeals, 177 Md. 426, 9 A. 2d 747; Haller Baking Company's Appeal, 295 Pa. 257, 145 A. 77. With exceptions, not pertinent here, a vested interest in a nonconforming use under zoning regulations is a property right, and any statute or law purporting to take away that right is invalid. Board of Commissioners v. Petsch, *supra;* City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828.

A contemplated or intended use standing alone is not sufficient. Board of Commissioners v. Petsch, *supra;* City of Omaha v. Glissmann, *supra.* To obtain a vested interest in a nonconforming use, a person, prior to the effective date of the regulation or ordinance making such use nonconforming and while violating no existing law or regulation, must cause either substantial construction to be made thereon or incur substantial liabilities relating directly thereto, or both. City of Omaha v. Glissmann, *supra.* The rule to be deduced from the above authorities is that preliminary contracts or work which are not of a substantial nature and contracts or work consistent with the zoning ordinances and regulations are not considered to be substantial construction or liabilities relating directly to the intended use which has become nonconforming because of the change or adoption of the regulations or ordinances. Board of Commissioners v. Petsch, *supra;* City of Omaha v. Glissmann, *supra.* See, also, 101 C. J. S., Zoning, § 186, pp. 943, 944 (Building or Use in Course of Construction); Meuser v. Smith (Ohio), 143 N. E. 2d 757, 141 N. E. 2d 209.

The defendants in this case affirmatively pleaded the existence of a nonconforming use in their answer. The burden of proof is upon the property owner who claims rights by virtue of a nonconforming use. 101 C. J. S., Zoning, § 363, p. 1207; Colabufalo v. Public Bldgs. Commissioner of Newton, 332 Mass. 748, 127 N. E. 2d 564.

The critical date for the test of the use of the property is September 6, 1966. Much of the apparent conflict in the testimony in this case was resolved on cross-

examination of the defendant Clarence N. Moore, Jr., since defendants were unable to sustain the burden of proof in establishing the conditions and uses of the property on September 6, 1966. Also, the trial court's findings and judgment were based upon a visual inspection of the premises. The evidence shows that on September 6, 1966, there was one electric pole on the northeast corner of the property with electrical wires running into it, a well, and some preliminary work done by a road grader marking out roads. There were no trenches, water or sewer pipes either on the property or installed, no poured concrete, or trailer houses present. There was one trailer house on the premises sometime in August 1966. As late as October 12, 1966, more than a month after the effective date of the act, there were no trailer houses on the property, but there were three poles with wires running from pole to pole. The road work was done by a Mr. Cunningham without cost. The trial court, after an inspection of the premises, found that this consisted of making "very shallow marks on the ground and was little more than scraping off the weeds and making an outline of a road or street." There is some evidence as to gravel placed on a portion of the road but the evidence is that it was not in existence on September 6, 1966.

Defendants had plans for 110 trailer lots costing approximately $500 each. They asserted that 14 trailer stalls were totally completed on September 6, 1966; that 36 were 75 percent completed; and that the remaining 60 stalls were 50 percent completed. The evidence, including the cross-examination of the defendant, Clarence N. Moore, Jr., shows that the stalls were not only not completed but there was no effective installation work accomplished at all. Water, electrical, telephone, and sewage connections, concrete pouring and concrete parking facilities, and planned lot fencing were not available on this date or installed. The property was staked by the defendants with the stakes protruding some 6 or

8 inches but weeds had prevented the stakes from being visible on September 6, 1966. We conclude from the evidence, as the trial court did, that there were no developed facilities available to accomodate any trailers and that the parking of any trailers on the property would be little other than parking trailers on open farm land which is adjacent to a well and an electrical source.

Radio advertising was contracted for after September 6, 1966; an original advertising sign reading, "Midway Trailer Park" had been destroyed and a second sign was installed on September 5, 1966, which read, "Midway Heights." Defendants alleged that they had expended funds and incurred liabilities totalling approximately $6,350 prior to September 6, 1966. On cross-examination it appeared that the amount actually spent was around $3,000 and the defendant, Clarence N. Moore, Jr., could not fix the dates as occurring before or after September 6, 1966. The record only shows that the defendants made an advance of $1,075 on an electrical line extension agreement, which amount was refundable upon compliance with the terms of the agreement, paid $950 to have a well installed, and purchased a tractor grader for $250. The evidence with relation to any contracts for laying the water and sewer pipes is, at best, uncertain, indefinite, and equivocal. It does appear that whatever work was done in this respect was completed and paid for after September 6, 1966. Further elaboration of the evidence is unnecessary to support the conclusion we come to in this case. From a full examination of the record in this case, we conclude that the defendants have not sustained their burden of proof to establish a nonconforming use of the property in question. We feel, on the other hand, that on September 6, 1966, the effective date of the zoning regulation, the use of this property was not that of a trailer court. The use of the property standing alone on that date would not make known to the neighborhood that the land was being

used as a trailer court, within the meaning of the rule laid down in Board of Commissioners v. Petsch, *supra*. In any substantial sense there was no construction or direct adaptability of the land for the intended purpose, and no employment of the land within the intended purpose. The defendants had not engaged in substantial construction nor incurred substantial liabilities directly relating to the establishment of a trailer park as a nonconforming use. City of Omaha v. Glissmann, *supra*. It is our conclusion, as it was the trial judge's, that everything that was actually done or performed on the property by September 6, 1966, and every use that was actually made of the property up to that date could be referred to as a conforming use just as well as it could be referred to as a nonconforming use. It is true, as the defendant Clarence N. Moore, Jr., testified, that the premises could be used as a trailer court as a nonconforming use because the water could be bucketed to the trailers, because the electricity could have been hooked up by temporary wires and cables, and because the sewage could have been run into a ditch down into a pit. But, as we have seen, the existing use must be an actual one, and it must be nonconforming use, otherwise property owners could claim a nonconforming use in any activity, business, or enterprise that required the use of water, sewer, and electricty. Almost all of the work and liabilities which had been incurred prior to September 6, 1966, were adaptable to and consistent with conforming uses. The small amount of construction and work which could be said to be nonconforming was very unsubstantial in nature and far short of compliance with the applicable rules set out herein. The defendants, on September 6, 1966, had not acquired a vested interest in a nonconforming use.

Defendants seek to compare this case with that of Board of Commissioners v. Petsch, *supra*. In Board of Commissioners v. Petsch, *supra,* it was undisputed that there was an established nonconforming use; that trailer

houses were actually making use of the property; and that power, telephone, water, and sewer services were connected up and installed and extended throughout the property. The issue in that case was whether the use could be extended throughout the area of a 3-acre tract. The issue in this case is whether there was an existing vested nonconforming use on September 6, 1966, and as we have seen, the defendants have failed to meet their burden of proof to establish such interest.

An issue is made by the defendants that the county had approved the project in April 1966 and that, therefore, the defendants were entitled to complete it. The evidence conflicts in this case as to whether any authorization of the county was orally revoked in July 1966. We do not need to decide this factual issue because it is not controlling. If a permit is obtained to use land for a use then permissible under zoning regulations and substantial construction is made thereon or substantial liabilities are incurred relating directly thereto, or both, before the permit is canceled or revoked, then the right to such use becomes established as a permissive nonconforming use. City of Omaha v. Glissmann, *supra*. This follows the general rule that a permit may be revoked where no vested right has been acquired thereunder before the subsequent change in the zoning laws or regulations is made which prohibits the permitted use or construction. The mere issuance of a permit gives no vested rights to the permittee nor does he acquire a property right in the permit. See, 101 C. J. S., Zoning, §§ 243, 244, pp. 1006, 1007, 1008. There is no merit to this contention.

The judgment of the district court granting the injunction is correct and is affirmed.

AFFIRMED.