The METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY, Appellant (Plaintiff Below),

v.

Jeffrey L. HAIR and Janet Hair, Appellees (Defendants Below).

No. 2–1185–A–360.

Court of Appeals of Indiana, Second District.

March 23, 1987.

Michael D. Keele, Chief Counsel, Indianapolis, for appellant.

Craig D. Doyle, Klineman, Rose, Wolf & Wallack, Indianapolis, for appellees.

SULLIVAN, Judge.

The plaintiff Metropolitan Development Commission of Marion County (Commission) appeals the trial court's denial of the Commission's request to enjoin Jeffrey L. Hair and Janet Hair (Hairs) from maintaining multi-family dwellings at 69 North Irvington Avenue and 106 South Ritter Avenue in Indianapolis.

We affirm.

The Commission presents several issues for our review on appeal. However, we need only address one of those issues in order to reach our decision.

Did the trial court err in determining that the properties qualified for the non-conforming use exception to the zoning restrictions? [1]

Our standard of review in actions to enjoin alleged zoning violations is to determine whether the trial court abused its discretion by failing to grant injunctive relief. *Bd. of Zoning Appeals v. Freeman* (1982) 1st Dist. Ind.App., 437 N.E.2d 1035, 1037. An abuse of discretion will be found only if the trial court's decision is clearly against logic, and the trial court's findings of fact will be disturbed only if they are clearly erroneous. *Id.*

Although the particular zoning ordinance applicable in this case was enacted in 1966, it was shown at trial that multiple-family dwellings had not been permitted at either of the addresses in question since 1922, the date of the original zoning ordinance. Thus, it was necessary for the Hairs to prove that the houses had been used as multi-family dwellings prior to 1922 in order to establish the affirmative defense of nonconforming use. *See Metropolitan Development Commission of Marion County v. Marianos* (1980) 274 Ind. 67, 408 N.E.2d 1267. The Commission argues that the trial court erred by finding that the Hairs had satisfied their burden. We disagree.

It is first necessary to note that the ordinance here does not contain a definition of "use" or "nonconforming use". *Cf. Pleasureland Museum, Inc. v. Dailey* (1981) 4th Dist. Ind.App., 422 N.E.2d 754 (City of Kokomo ordinance specifically defined "use").

Our law makes clear that the requisite "existence" of the nonconforming use on the effective date of the ordinance does not necessarily mean that the use must have been actually exercised at that time. *Dandy Co., Inc. v. Civil City of South Bend* (1980) 3d Dist. Ind.App., 401 N.E.2d 1380. It is generally considered that land-use in a

---

1. In the case before us, the trial court made no determination or findings with respect to the laches defense claimed by Hair. Although the evidence might support such a determination, we may not affirm the judgment upon grounds that the Commission was guilty of laches in its attempts to enjoin the use of the properties as multi-family dwellings. *City of Elkhart v. Middleton* (1976) 265 Ind. 514, 356 N.E.2d 207; *City of Hammond v. Conley* (1986) 3d Dist. Ind.App., 498 N.E.2d 48.

zoning context involves various concepts including design, adaptability, intention, actual occupancy and utilization.

It would seem that design or intention is particularly, if not singularly, germane to a prospective determination of use, such as to determine whether a variance is needed. On the other hand when viewing the land-use concept from a historical perspective or by hindsight, actual utilization would seem to be the appropriate criterion. If, for instance, a structure had never been used for a particular purpose, even though it may have been originally designed for that purpose, it would seem erroneous to say that the premises has been put to that particular use.

*Lutz v. New Albany City Plan Commission* (1951) 230 Ind. 74, 101 N.E.2d 187 appears to support this proposition. *Lutz* quoted from *Chayt v. Zoning Appeals Board* (1939) 177 Md. 426, 9 A.2d 747 to the effect that "existing use" embraces a concept of "utilization" and as "being employed for a given purpose." The Maryland case relied upon by the court in *Lutz* observed that the term contemplates " 'construction or adaptability ...for the purpose, *and* employment of the [premises] within that purpose.' " 230 Ind. at 80, 101 N.E.2d 187. *See also* 4 Rathkopf, *The Law of Zoning and Planning,* § 51.02 at 51–18. *Lutz* involved a claim of use for land purchased and intended for a gasoline station before the ordinance's effective date but no construction had commenced. In *Lutz,* therefore, the proposed structure had not even been designed, and clearly did not constitute a "use" of any sort. An identical holding is found in *Montgomery v. Board of Zoning Appeals* (1963) 135 Ind. App. 437, 193 N.E.2d 142.

In *Pleasureland Museum, Inc. v. Dailey, supra,* 422 N.E.2d 754, we held as a generality that "use" denotes the purpose for which the building is designed, arranged or intended, *or* for which it is occupied or maintained. This holding would likewise indicate that intention or design is determinative when viewing the issue prospectively but that actual in-place utiliza-tion is determinative if the issue is viewed retrospectively.

Be that as it may, we need not bog down in an analysis which depends upon the semantic nuances of the disjunctive "or" as opposed to the conjunctive "and". It suffices for our purposes to consider and apply basic evidentiary concepts of permissible inferences.

The evidence susceptible to credit by the trial court, even in light of arguably contrary inferences, disclosed that both properties here involved .were designed and adapted for the purposes of multi-family dwelling prior to 1922 and that both properties were in fact thereafter utilized for multi-family dwellings (the Irvington Avenue property at least as early as 1944 and no later than 1955, and the Ritter Street property no later than 1970).

Because as noted in II *Wigmore on Evidence* § 437 (Chadbourn Rev. 1979) it is appropriate under many circumstances to infer the past existence of a condition from proof of its existence at a later time, it stands to reason that proof of the design and adaptability for a particular use at an earlier time when coupled with proof of the actual use at a subsequent time gives rise to a reasonable inference that the use in question existed during the interval. Of course, such inference might be rebutted by evidence to the contrary or that the particular use was voluntarily abandoned during the period in question and was subsequently resumed. *See Wigmore,* § 437, *supra.*

In any event, it was entirely appropriate for the trial court to bridge an arguable gap between design-construction and actual utilization by means of the retrospective inference. In this connection the design and adaptability of the property may be considered along with other evidence of actual use beyond mere preliminary work or planning. 4 Rathkopf, *Law of Zoning and Planning* § 51.02, *supra* at 51–21.

Even were we to assume that at some time after 1922, the structure ceased to be used for multi-family dwelling purposes, such would not compel an inference that the earlier use had been abandoned.

*Dandy Co., Inc. v. Civil City of South Bend, supra,* 401 N.E.2d 1380. Thus, it was not inappropriate for the trial court to consider the design and adaptability of both properties on and prior to the effective date of the 1922 ordinance, to infer therefrom an existing use for multiple family purposes at that time, and further that, absent compelling evidence to the contrary, such use was actual and was being exercised continually from 1922 to the present.

Those case decisions which contain language in seeming conflict with the holding here are in fact supportive of the principle that the trial court has great latitude in weighing the evidence and that the appellate courts will give great deference to that assessment of the evidence.

In *Dandy Co., Inc. v. Civil City of South Bend, supra,* our Third District held that under the facts there, the trial court might well have concluded that there was an existing nonconforming use despite a two-year lapse but that the trial court's contrary conclusion determining an abandoned use was also appropriate. Likewise, in both *Ashley v. City of Bedford* (1974) 1st Dist., 160 Ind.App. 634, 312 N.E.2d 863, and *O'Banion v. State ex rel. Shively* (1969) 146 Ind.App. 223, 253 N.E.2d 739, the factual determinations which rejected nonconforming uses were affirmed.

More recently, in *Bird v. Delaware Muncie Metropolitan Plan Commission* (1981) 1st Dist. Ind.App., 416 N.E.2d 482, the court indicated that placement of residential structures upon land between 1969 and 1971 did not constitute a nonconforming use on the effective date of a 1973 ordinance because the structures were not actually inhabited until 1978. However, those structures, as noted by the First District, were "mere shells" with no windows or doors and were uninhabitable until 1978. The language of the *Bird* decision must be construed in the factual context presented and in light of the fact that the court was affirming the determination of the trial court. The holding should not be interpreted as an ironclad requirement that in every instance residential property must be physically occupied and inhabited before a resi-

dential "use" may be attributed to the property.

We believe the case which on its facts is more instructive is *City of Beech Grove v. Schmith* (1975) 2d Dist., 164 Ind.App. 536, 329 N.E.2d 605. In that case, as here, the trial court had found a nonconforming use to exist. The property had at various times been used as a boarding house for railroad workers, a home for wayward girls, and individual apartments. There was also evidence that at some time or at different times there had been kitchen facilities added or removed and a bathroom added. Under the circumstances the trial court determined that the property had been continuously used for "apartment purposes", and that determination was affirmed.

The factual determination of the trial court here is not without foundation and is consistent with the applicable legal principles. We will not substitute our judgment merely because the structures and the lots should perhaps be better or more cleanly maintained.

■ The Commission also argues that the Hairs are estopped to claim a nonconforming use for the property at 69 North Irvington because they previously petitioned for a zoning variance for the property. The Commission cites *Anderson Lumber & Supply Co. v. Fletcher* (1950) 228 Ind. 383, 89 N.E.2d 449, for the proposition that a party who applies for a variance may not later claim that the property comes within the nonconforming use exception to the variance requirement.

The Commission has misread the holding of the *Anderson Lumber* case. In *Anderson Lumber,* the appellant lumber company was enjoined from constructing *new* buildings on its property and from changing or extending the existing use until a variance was granted. The lumber company had previously applied for a variance and the Board of Zoning Appeals had dismissed the application, concluding that it had no jurisdiction to consider the application. The Board's conclusion was based upon its belief that no variance was needed because the use of the property in question constituted a nonconforming use in exist-

ence prior to the enactment of the applicable zoning ordinance.

In the subsequent action to enjoin the lumber company, the lumber company argued that the action of the Board conclusively established the existence of a nonconforming use. Our Supreme Court disagreed, holding that the Board had jurisdiction to grant or deny a variance but no authority to determine that a variance was not needed.

Without regard to the apparent error of the Board in concluding that the then existing use would carry over and apply to new structures and a dramatic extension, if not change, of that use, the issues framed before the Supreme Court dealt with a preclusion of the Board's determination of a perceived "collateral" matter, i.e., whether a variance was or was not needed. It might seem to us that an administrative agency may properly resolve factual disputes as a preliminary to exercising its jurisdiction. However, the *Anderson Lumber* court appeared to decide otherwise. Nevertheless, the *Anderson Lumber* holding that a variance request is inconsistent with a claim of nonconforming use must be placed in proper perspective. Again, the use for which a variance was sought involved a substantial extension or change of use. It was certainly understandable, therefore, that our Supreme Court drew a distinction between the existing use and the use sought.[2]

Subtleties of case by case analysis aside, it would seem only logical and proper to reject the Commission's estoppel argument. A land owner should be entitled to seek a peaceful utilization of his property even to the extent of seeking a governmental stamp of approval which the owner deems unnecessary. One might reasonably try to avoid the risk of a shut-down of his business operation pending a prolonged and expensive permanent injunction suit. *See Board of Zoning Appeals v. Heyde* (1974) 3d Dist. 160 Ind.App. 165, 310 N.E.2d 908. Assessing his various options he might well decide to "not fight City Hall" and to proceed along the lines of accommodation and

compromise. Persons of strong principle and/or unlimited funds might choose otherwise, but we will not apply a doctrine of estoppel or any other issue preclusion concept to the facts before us. *See Theta Kappa, Inc. v. City of Terre Haute* (1967) 141 Ind.App. 165, 228 N.E.2d 34 (Appellate Court denied Motion to Dismiss Appellant's Petition for Rehearing which asserted that filing petition for variance subsequent to appeal mooted Appellant's contention that use was in conformity with zoning classification).

The Hairs' previous request for a variance did not estop them from claiming in the subsequent action brought by the Commission that their properties came within the nonconforming use exception to the zoning ordinance. There was sufficient evidence to support the trial court's finding that the properties qualified for the nonconforming use exception.

The judgment of the trial court is affirmed.

SHIELDS, P.J. and BUCHANAN, J., concur.

---

**2.** In *Miller v. Board of Zoning Appeals* (1979) 3d Dist. Ind.App., 397 N.E.2d 1091, a majority par-

enthetically opined that a variance was appropriate for alteration of a nonconforming use.