VOGL *v.* MAYOR & CITY COUNCIL OF BALTIMORE

[No. 226, September Term, 1961.]

*Decided April 10, 1962.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*A. Risley Ensor* for appellant.

*John A. Dewicki, Assistant City Solicitor,* with whom were *Francis B. Burch, City Solicitor* and *James B. Murphy, Assistant City Solicitor,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

In April, 1961, appellant applied to the Building Inspector Engineer of Baltimore City for permission to extend his existing 36 by 23 foot non-conforming use printing shop to include an adjoining 18 foot unit, all, originally, being part of a chain garage structure consisting of eight nine foot garages. After denial of the application, an appeal was taken to the Board of Municipal and Zoning Appeals (Board). A hearing was duly held by the Board, and the application disapproved; whereupon an appeal was taken to the Baltimore City Court, and that court affirmed. This appeal followed.

The sole question presented is whether the decision of the Board was supported by substantial evidence within the meaning of the law that an administrative board's decision which

lacks such supporting evidence is unreasonable, arbitrary and capricious.

Appellant is the owner of premises known as 1711 DeSoto Road, located in a residential use district. In the rear of said premises is a ten foot alley. Facing on this alley is a one-story 72 by 23 foot brick building belonging to appellant, which, as stated above, originally consisted of eight nine foot garages. By 1931, when zoning first went into effect in Baltimore, the four easternmost sections were being utilized by the then owner as a machine shop. In 1953, appellant, who had become a nephew-in-law of the owner of the premises and was living at said premises petitioned (in the name of the owner) the Building Engineer for permission "to use [a] portion of garages, formerly used as Machine Shop for printing establishment," stating the building was being "used for 4 garages and a *machine shop*, [and was] to be used [if permission were granted] for 4 garages and a *printing shop*." The petition further stated there would be "no alterations." The Building Engineer denied the application, but the Board reversed and granted it, permitting the operation of the printing shop as a non-conforming use in the eastern 36 feet of the building. Baltimore City Code (1950), Article 40, as amended by Sections 13 (a) and (f) of Ordinance 711, approved May 21, 1953.

The present application is based upon the theory that the appellant and his predecessors had used, before 1931 and since, the 18 foot section now under consideration (consisting of two of the former nine foot sections with the partition removed) for storage purposes in conjunction with the machine shop and printing shop operations, thereby establishing a non-conforming use. And as "storage" and "printing establishments" are in the same use classification and the Ordinance, *supra,* permits a non-conforming use to be changed to a use of the same classification, appellant is entitled to use the section in his printing business.

Appellant testified that his printing business ran into difficulty. As a result he was forced to start over-imprinting soap boxes. The 18 foot section under consideration had been used

by him since 1950 for storage and the "old machinist" (the former owner) had used it since 1928 for spare parts, for lawn mowers and storage of various kinds of supplies. He thought it was part of the 1953 non-conforming use allowed him. When it was called to his attention that he had stated in 1953 that the garages were used for the storage of automobiles, he said if he stated that, "[he] made a mistake — maybe [he] didn't understand the question." When asked by Judge Prendergast why he did not ask in his application of 1953 that the 18 foot unit adjacent to the printing shop be included in the non-conforming use, he replied: "* * * There's a confusion. When you say 'printing shop,' it used to be garages. I always called them garages. Even the printing shop, I just said garage." When asked further if his 1953 application had not proposed that all of the building, except the 36 foot section occupied by the printing shop, was to be used as a garage (or garages), he said: "I did not mean it; I was confused." He further stated that the partition between the two former nine foot sections (creating the 18 foot unit now under consideration) had been removed "recently."

.The appellant produced three witnesses. Carl Exner, who came to this country in 1929 and became acquainted with the "old machinist" in 1930, gave testimony that was not of a very definite or precise nature, as is illustrated by the following questions asked by appellant's counsel and the witness' answers:

Q. "And the 18 foot unit next to the existing shop was used for what?" A. "Storage."
Q. "Storage in connection with the machine shop?" A. "No."
Q. "I say, was the storage used in connection with the machine shop business?" A. "Yes, machine tools and old lawn mowers, and step ladders and household goods, shutters, and what he used on the building too."

The substance of his testimony, in this rather indecisive manner, was to the effect that the 18 foot unit had been uti-

lized for storage purposes before 1931 until some six years before 1961, when he stopped going to the property.

Frank Zoucheck said he lived in the neighborhood from 1927 until 1931 and the 18 foot unit adjacent to the machine shop was utilized for storage of spare parts, old lawn mowers, etc. He estimated 75 to 80 percent of the storage was in connection with the business; the remainder was for household purposes.

H. R. Harlow sold a printing press to the appellant in 1951, and has been there many times since. In 1951, the 18 foot unit was being used for storage; in 1961, there was no storage, the appellant having installed an embossing press therein.

Mrs. Dillman, a protestant, moved into 1707 DeSoto Road in about 1936. At that time, the 36 foot eastern unit was used as a machine shop. The nine foot garage (not 18 foot), or unit, adjacent was used to store coal, ladders and "stuff like that." The operation on appellant's property has increased in volume, and is very annoying. The presses are operated "from early in the morning and * * * even * * * on Sunday." Some of the trucks coming in are so large they cannot "make it down" the alley. Mr. Kolberg (appellant's predecessor) used one nine foot unit only for storage, but appellant "broke it [presumably the two nine foot units] up" and is using it for a printing shop.

Peter Dillman, the husband of the previous witness and another protestant, found the operation conducted by the appellant very displeasing and disturbing. One, and only one, nine foot section, or garage, had ever been used for storage.

All of the proceedings relating to the 1953 application, including the testimony, was introduced into evidence. Accompanying the 1953 application was a blue print plat, which clearly delineated the 36 by 23 foot unit to be used as a printing establishment, and the remaining units that were to be used for garages. The appellant testified twice that "the first and second garages [presumably the westernmost units] were rented and the third and fourth [the 18 foot unit now under consideration] were vacant." And, as already indicated, the

application specifically stated the property was to be used for the printing shop and *four* garages, with *no* alterations.

It was also shown that the records of the Police Survey of 1931 showed the dwelling on the subject premises was arranged for two apartments, and there were seven garages for three cars in the rear; no mention was made of the machine shop.

The appellant states: "The sole issue of fact was how the 18 foot unit in question was used in 1931 when the Baltimore zoning law went into effect." In this statement, he is in error. Non-conforming uses may be abandoned, and whether the alleged non-conforming use in this case (if there were one) was in fact abandoned, we shall consider below, after briefly discussing whether the evidence was sufficient to establish a non-conforming use as of 1931.

There can be little doubt that each claimant must assume the burden of establishing the existence of a non-conforming use at the time of the passage of the prohibiting zoning ordinance. *Lapidus v. Baltimore City*, 222 Md. 260, 262, 159 A. 2d 640. 2 Metzenbaum, *Law of Zoning* (2nd ed.), 1233, says the proposition is both axiomatic and court-sustained. And whether a non-conforming use exists or has been abandoned are questions of fact to be decided by the Board. Ordinance, *supra,* Section 13 (f). We shall not again review the testimony at this point. It may well be that the Board would have been justified in finding that appellant failed to meet his burden in establishing a non-conforming use in the 18 foot unit as of 1931, but the Board did not make any specific finding concerning the same. We shall therefore assume, without deciding, that the alleged non-conforming use (commercial storage) was existent in 1931, and proceed with the question of abandonment.

The Board found that a printing establishment is a use excluded from a residential zone—a fact conceded by all. It then went on to state:

> "In a prior appeal to this Board * * *, the Board found that the premises now being used as a printing shop, size 23 feet by 36 feet, had the status of a nonconforming use and was entitled to be continued to

be used as a printing shop. The records in that case show that the remainder of the building on the rear of the lot *was then being used as four garages and was to continue to be used as four garages.* Testimony offered at the public hearing, on the application now under consideration, indicates that some use of the 18 foot by 23 foot space adjoining the printing shop has been for the storage of equipment used in conjunction with the use of the space now used as a printing shop. No evidence was submitted to show that such use of the 18 foot space adjoining was ever authorized, and the Board finds no sufficient reason to warrant it in making an exception to the use district regulations so as to approve the use of the adjoining garage space as a printing shop." (Emphasis added.)

The italicized portion of the above resolution, we think, was a clear finding of fact by the Board as to the actual use being made of the property in 1953 and the *intention* of the owner concerning its future use. With the record before us as we have outlined it above, we would be completely unwarranted in holding that these findings of the Board were not based upon substantial evidence, *i. e.,* such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Snowden v. Mayor & C. C. of Baltimore,* 224 Md. 443, 168 A. 2d 390.

It is well-established law that abandonment of a non-conforming use depends upon the concurrence of two, and only two factors: one an intention to abandon; and two, some overt act, or some failure to act, which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. *Landay v. Board of Zoning Appeals,* 173 Md. 460, 196 A. 293. 2 Rathkopf, *The Law of Zoning* § 61-2, citing *Landay,* states, "cessation of use alone is merely some evidence of such intent [intention to abandon] ; *the decisive test is whether the circumstances surrounding such cessation of use are indicative of an intention to abandon the use and the vested rights therein."* Appellant's testimony be-

fore the Board in 1953 relating to the then use of the subject property as four garages,[1] and his filing of the applications mentioned (especially the one wherein he stated under the heading "Describe fully and completely what is to be done" that he intended "to use [a] portion of the garages, formerly used as Machine Shop for Printing establishment—no alterations") were sufficient bases for the Board to find an abandonment and an overt act carrying a strong implication that the owner neither claimed nor retained any interest in the subject matter of the abandonment.

The case of *Knox v. City of Baltimore,* 180 Md. 88, 23 A. 2d 15, was factually somewhat analogous to the one at bar. The property owner claimed a non-conforming use of lower classification than residential use. The City contended that if the non-conforming use had ever existed, it had been abandoned or relinquished by the use of the property in a higher classification (residential). The owner admitted that in 1936 (the case was decided in 1941) he had applied for a permit to construct a dwelling and garage on the lot in question, but claimed he had been misled by the Building Engineer's office when he applied for the permit. The court pointed out the two elements necessary for abandonment: intention and an overt act or failure to act. And, although the Court was not required to make a specific holding on the point in that case, it clearly indicated what the holding would have been, had one been required, by stating, "as to the intention of appellant and some other (sic) act on his part, he admits that he applied for the permit and obtained it, that he built the garage and the reason he did not build the dwelling house was because he could not finance it."

We shall not prolong this opinion further. We hold that the Board's findings were supported by substantial evidence; consequently the trial court's affirmance of the Board's decision was correct.

*Order affirmed, with costs.*

---

1. It is conceded that "garages" are in a higher use classification than "printing establishments," and a non-conforming use, if changed to a use of a higher classification, may not thereafter be changed to a use of a lower classification.