C & P BUILDING LIMITED
PARTNERSHIP, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent.

No. 80–760.

District of Columbia Court of Appeals.

Argued May 7, 1981.
Decided Jan. 29, 1982.

John F. McCabe, Jr., Washington, D. C., for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reis-

chel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before KELLY and HARRIS, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

In this case, C & P Building Limited Partnership petitions for review of an order of the District of Columbia Board of Zoning Adjustment (Board). The Board upheld the Deputy Zoning Administrator's decision to deny petitioner's application for a new certificate of occupancy.[1] The new certificate of occupancy would have entitled petitioner to use or rent out the subject building, which is located in a residential district (R–4), as an office building without first obtaining a use variance.

At the administrative level, petitioner sought to establish by means of documentary evidence that, at the time the district was first zoned residential, office use of the building was a lawful nonconforming use which may be continued automatically under D.C.1973, § 5–419. *See* Part I *infra*. The Board concluded that the office use existing at the time the district was zoned residential was only an accessory use[2] and that, therefore, the zoning regulations require petitioner to seek a use variance before obtaining a new certificate of occupancy for office use.

■ We review the Board's decision to determine whether the decision is based on substantial evidence. D.C. Code 1973, § 1–1509(e). The substantial evidence test imposes three requirements on the Board: (1) the Board must make written findings of "basic facts" on all material contested issues; (2) each basic finding must be supported by evidence sufficient to convince reasonable minds of its adequacy; and (3) these findings taken together must rationally lead to conclusions of law which are

legally sufficient to support the Board's decision. *See Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission*, D.C.App., 402 A.2d 36, 42 (1979). Having reviewed the record, we conclude that the Board's decision is based on substantial evidence and we, therefore, affirm.

I

■ Before turning to the facts in this case, we first examine the District of Columbia nonconforming use statute, D.C. Code 1973, § 5–419, the applicable zoning regulations, and the general policy considerations behind these provisions. Section 5–419 of the D.C.Code provides in pertinent part:

The lawful use of a building or premises *as existing and lawful at the time of the original adoption of any regulation* . . . may be continued although such use does not conform with the provisions of such regulation, provided no structural alteration . . . or no enlargement is made or no new building is erected. [Emphasis added.]

This language indicates that, if a use was "existing and lawful" prior to the effective date of more restrictive zoning regulations, the owner need not seek a special exception or use variance in order to continue that use. Section 5–419 also provides that the Zoning Commission "may in its discretion provide, upon such terms and conditions as may be set forth in the regulations, for the extension of any such nonconforming use throughout the building and for the substitution of nonconforming uses." *See also id.* § 5–420. Thus, although a use "existing and lawful" at the time of a zoning change may be continued automatically as a lawful nonconforming use, an extension of or change in that nonconforming use triggers the applicable zoning regulations adopted by the Zoning Commission.

---

1. D.C. Zoning Regs. §§ 7110.4, 7110.5 (1958, with amendments through October 1, 1980) require that the registration of each nonconforming use be renewed whenever there is a change of ownership or a change of the operator.

2. Section 1202 of the D.C. Zoning Regulations defines "accessory use" as follows: "A use customarily incidental and subordinate to the principal use and located on the same lot therewith."

The Zoning Commission has exercised its authority under § 5–419 by promulgating zoning regulations relating to extensions of and changes in nonconforming uses. Under these regulations, the Board, in its discretion, may approve an application for a special exception and thereby permit an extension of a nonconforming use to other portions of a structure. *See* Zoning Regs. §§ 7105, 7105.2, 8207.2 (1958 with amendments through Oct. 1, 1980). The regulations also provide that a "*nonconforming use* may be changed to a use which is permitted in the most restrictive *district* in which the existing *nonconforming use* is permitted." *See* Zoning Regs. §§ 7104, 7104.2, 8207.2 (emphasis in text); *Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment,* D.C.App., 411 A.2d 959, 961–62 (1979) (word "permitted" means "allowed," either as a matter of right or by special exception). If the requirements of change in use regulation § 7104.2 are satisfied, the Board may, in its discretion, approve a change in nonconforming uses by granting a special exception.[3] Unless the requirements of Zoning Regulation § 7104.2 are met, however, the Board is precluded from approving a change from one nonconforming use to another by granting a special exception. *See Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment, supra.* Under such circumstances, the applicant must seek a use variance. *See* Zoning Regs. § 8207.11.

Both this court and the Zoning Commission have stressed that nonconforming uses are not favored and must be regulated strictly so that the goals of the districting scheme established by the Zoning Commission are not undercut. *See* Zoning Regs. § 7101.1. *See also Wood v. District of Columbia,* D.C.Mun.App., 39 A.2d 67, 69 (1944). In *Silverstone v. District of Columbia Board of Zoning Adjustment,* D.C.App., 372 A.2d 1286, 1290 (1977), *aff'd on reconsideration,* 396 A.2d 992 (1979), this court stated:

Despite the protection given by the courts to such substantial property rights as nonconforming uses, the continuance of uses and structures that do not conform to the current zoning restrictions and to the general scheme of desirable land uses militates against the effectiveness of the planning and zoning scheme as a whole.

Thus, we have stressed that any interpretation of the zoning regulations which expands the prerogatives of nonconforming users is generally undesirable. *See George Washington University v. District of Columbia Board of Zoning Adjustment,* D.C. App., 429 A.2d 1342, 1345 (1981); *Lenkin v. District of Columbia Board of Zoning Adjustment,* D.C.App., 428 A.2d 356, 358 (1981); *Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment, supra* at 963.

## II

We now turn to examine the evidence before the Board in this case and the Board's interpretation of § 5–419 and the zoning regulations.

The building is located on property which originally was zoned commercial and which first was zoned residential in 1950. Both parties agree that in order to determine what use (or uses) appropriately can be deemed a continuation of a prior lawful nonconforming use under § 5–419, the Board must examine the use of the building at the time of the zoning change in 1950 and the use for which petitioner now seeks a new certificate of occupancy.

The new certificate of occupancy sought by petitioner was intended to benefit Liberty Lobby, Inc., the lessee and contract-purchaser of the property. Liberty Lobby, Inc., is a national organization which reports on legislative activity. The organization puts out a weekly newspaper, has a radio program, and does large mailings. Liberty Lobby, Inc. hopes to use the proper-

---

**3.** Before exercising its discretion under § 7104 or § 7105, however, the Board is required to consider a number of factors, including any adverse impact the new nonconforming use or extension would have on the character or development of the neighborhood. *See* Zoning Regs. §§ 7109, 7109.112.

ty as an office building primarily for book-keeping and recordkeeping.

Petitioner presented no direct testimony on the use history of the building and relied exclusively on documentary evidence. Petitioner's principal piece of documentary evidence and, in fact, the only piece of documentary evidence relating to the use of the building at the time of the 1950 zoning change, was a certificate of occupancy issued on October 14, 1949[4] to the Chesapeake & Potomac (C & P) Telephone Company. This 1949 certificate described the use of the building as a "telephone exchange[5] and auxiliary services, training school for employees and office building." Petitioner argues that this description indicates there were three principal uses of the building in 1950; that the telephone company's office use was a substantial and independent use; and that, therefore, this office use is a nonconforming use which may be continued automatically under § 5–419 by Liberty Lobby, Inc.

The Board first noted that, if the telephone company's office use in 1950 were an accessory use, the accessory office use could not become the basis for a principal nonconforming office use by Liberty Lobby. The Board then concluded that petitioner did not carry its burden of establishing that the office use existing in 1950 was more than an accessory use; that any existing nonconforming rights are limited to those associated with the telephone exchange use;[6] that the Board was precluded by its change in use regulations from granting a special exception for the change in use from telephone exchange to a Liberty Lobby office building;[7] and that, therefore, petitioner must seek a use variance from the Board in order to use the building as a Liberty Lobby office building.

### III

The Board's decision to affirm the Deputy Administrator's denial of petitioner's application for a new certificate of occupancy was based on a sound interpretation of § 5–419 and the zoning regulations and a fair and proper allocation of the burden of proof.

---

**4.** Petitioner introduced a portion of the transcript of a 1956 hearing containing a reference to the building as an "office building" and some vague discussion of the use of the building in 1956, and "for many years" prior to 1956. The Board considered this evidence, but concluded that it was not relevant or probative. The Board stressed that the fact that the Board characterized the building as an "office building" does not preclude it from later deciding that any office use was an accessory use, for the question of whether the use was principal or accessory was not before the Board at that time. Compare Metropolitan Washington Bd. of Trade v. Pub. Serv. Comm'n, D.C.App., 432 A.2d 343, 349 n.11 (1981) (agency's label is not necessarily determinative) with Smith v. D.C. Bd. of Zoning Adjustment, D.C.App., 342 A.2d 356, 359 & n.9 (1975) (Board required to consider and make findings relating to an apparent deviation from a long-standing interpretation of a regulation).

We agree with the Board's analysis. We also note that the relevant inquiry is the nature and extent of the use of the building in 1950, not in 1956. The 1956 documentary evidence does not establish that there was an existing and substantial, lawful office use (i.e., an office use that was more than accessory, see Part III infra) in 1950 and, therefore, cannot establish a substantial and lawful office use in 1956 or the present right to a continuation of a lawful nonconforming office use. See Lange v. D.C. Bd.

of Zoning Adjustment, D.C.App., 407 A.2d 1058, 1061 (1979) (a valid nonconforming use cannot be based on a prior unlawful use). We, therefore, reject petitioner's arguments relating to the 1956 documentary evidence.

**5.** A telephone exchange is essentially a building "contain[ing] telephone central office equipment and facilities for the purpose of furnishing communications service for the community."

**6.** The Board based this finding, in part, on the testimony of a witness who stated that she had been an area resident since 1956 and that the building, to her knowledge, had always been used as a telephone exchange.

**7.** Petitioner does not challenge the Board's analysis of § 7104.2, relating to changes in nonconforming uses. Petitioner simply challenges the need to consider § 7104.2. We note, however, that even if the Board had accepted petitioner's argument that the telephone company's office use was one of three principal uses in 1950, it does not necessarily follow that this office use or a similar office use could become the sole principal use and continue automatically under § 5–419. We express no opinion on how the zoning regulations should be interpreted under such circumstances.

The Board's interpretation of § 5–419 and the zoning regulations precludes the Board from basing lawful nonconforming use status on what was an accessory use at the time of the change in zoning regulations. This interpretation comports with the mandate contained in the zoning regulations that nonconforming uses be strictly regulated, and comports with the law, as well. *See Sheridan-Kalorama Neighborhood Council v. District of Columbia Board of Zoning Adjustment, supra.* Moreover, this interpretation is consistent with discussions of nonconforming uses by scholars who stress that what is an accessory use at the time restrictive zoning regulations are adopted cannot become the basis for a principal nonconforming use. To permit an accessory use to become the basis for a principal nonconforming use would be to undercut the general policy underlying the zoning regulations—the policy of restricting nonconforming uses in order to promote ultimate conformity. *See generally* 3 A. Rathkopf, The Law of Zoning and Planning 58–18, –19, –21, –22 (4th Ed. 1980); 6 P. Rohan, Zoning and Land Use Control, §§ 41–03 [2][a], 41.03[3][e] (1978). We, therefore, uphold the Board's interpretation of the applicable zoning regulations. *See George Washington University v. District of Columbia Board of Zoning Adjustment, supra* at 1348 (agency's interpretation of regulations should be upheld unless plainly erroneous or inconsistent with the regulations).

The Board also correctly placed the burden on petitioner to establish that there was a prior office use of a substantial nature (*i.e.,* an office use that was more than accessory) which could be continued without the necessity of considering the change in use regulations. Because nonconforming uses are not favored, this court has held that the party asserting the right to the continuation of a nonconforming use must carry the burden of proof. Petitioner must establish at the administrative level that his use existed at the time of the enactment of the restrictive zoning regulation, that it was a lawful use at that time, and that it was a use entitled to be protected and preserved. *See Bernstein v. District of Columbia Board of Zoning Adjustment,* D.C.App., 376 A.2d 816, 819 (1977); *Vogl v. Baltimore,* 228 Md. 283, 287, 179 A.2d 693, 696 (1962). *See generally* 6 P. Rohan, *supra,* § 41.03[6], at 41–94 n.103.

Although petitioner introduced documentary evidence establishing that a portion of the building was being used for offices at the time of the zoning change, we are unable to say that the Board failed to make written findings of basic facts which are supported by sufficient evidence and which rationally lead to the Board's conclusions of law. Petitioner failed to carry its burden of establishing that the office use was more than accessory in 1950. Once the Board found that the prior existing office use was only accessory to the telephone exchange use and that the Board is required to consider the change in use regulations under such circumstances, the Board had no discretion to issue a new certificate of occupancy for office use. Under the zoning regulations, petitioner is required to obtain a use variance. *See* Part I *supra.* We are, therefore, unable to conclude that the decision to deny petitioner's application for a new certificate of occupancy was arbitrary, capricious, or unsupported by substantial evidence. Accordingly, we affirm the decision of the Board.

*Affirmed.*